UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSEPH MATERIA** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-2251(RWR) |
| | ) |
| **ELAINE L. CHAO, SECRETARY** | ) |
| **UNITED STATES DEPARTMENT** | ) |
| **OF LABOR** | ) |
| | ) |
| Defendant. | ) |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR CERTAIN CLAIMS OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE**

Plaintiff, Joseph Materia, through his undersigned counsel and pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, hereby opposes the Defendant's Motion to Dismiss Amended Complaint or Certain Claims, or in the Alternative, to Transfer for Improper Venue, and in support thereof, submits this Opposition.

**I.  INTRODUCTION**

In its motion, Defendant argues that venue is improper based on the incorrect assertion that the unlawful employment practices were predominantly committed in Massachusetts. In its quest to demonstrate that the Agency's unlawful employment practices occurred principally in Massachusetts, the Defendant painstakingly enumerates all the Agency's unlawful employment practices that occurred between January 2005 and August 2005. It conspicuously fails to mention, however, the numerous other unlawful employment practices which occurred after

August 2005, when Mr. Materia relocated to Washington, D.C. and which still continue to this day.

In other words, whereas the harassment that occurred in Massachusetts lasted approximately eight months, the harassment in the District of Columbia has far surpassed that amount of time and, to this day, still continues. Plaintiff can therefore establish, under 42 U.S.C. § 2000e-5(f), that venue is indeed proper in this Court as the majority of unlawful employment practices occurred in the District of Columbia and not in Massachusetts as Defendant avers.

## II. FACTS

Mr. Materia began working for the Department of Labor ("DOL") in the Boston office as a Veterans Program Specialist (GS-9-3001). His duties were to provide administrative support to veterans' training programs in the Northeast region. Shortly thereafter, in January 2005, he was introduced to his third-line manager, Kathleen Summers, the Regional Leader for the DOL Northeast Region and the highest ranking Agency official in the region. It was evident from the beginning that Ms. Summers was interested in Mr. Materia in more than a collegial manner. Amended Compl. ¶¶ 9-18. Nevertheless, Mr. Materia attempted to work with her despite her unwelcome sexual advances. It became quite apparent, however, that a professional relationship was not desired by Ms. Summers. To force Mr. Materia to comply with her sexual demands, she began using her position and the power she wielded in the Agency to threaten Mr. Materia's professional status. In fact, Ms. Summers was so blatant with her *quid pro quo* harassment that is soon became clear to Mr. Materia that he would have to search for another position outside of the Massachusetts region to escape Ms. Summers if he ever wanted to advance in his career. Amended Compl. ¶¶ 19-22.

Accordingly, in April 2005, Mr. Materia discussed the possibility of relocating to Washington, D.C. with John McWilliam, a high ranking Agency official. Amended Compl. ¶ 25. He also informed Mr. McWilliam of the events which had transpired with Ms. Summers. Id. Mr. Materia also told Ms. Thompson, his supervisor, about Ms. Summers' inappropriate behavior, but she failed to take steps to stop the harassment. Amended Compl. ¶ 30. In May 2005, Mr. Materia met with Chick Ciccolella and Mr. McWilliam. They offered him the position in Washington, D.C. Amended Compl. ¶ 35.

In August 2005, Mr. Materia relocated to Washington, D.C., but Ms. Summers continued to harass him. She informed Mr. Materia that he would have to depend on her assistance for a permanent assignment and promotion while he was in Washington, D.C. Amended Compl. ¶42. She also appeared at his office unexpectedly in September 2005, and made it a point to inform him that his assignment to a permanent position was dependant upon her recommendation. Amended Compl. ¶ 43. She also repeatedly called him at his office, his cellular telephone and e-mailed him professing her undying ardor. Id.

In October 2005, Ms. Summers once again visited Mr. Materia in Washington, D.C. and insisted he meet her, pretending it was work-related. Amended Compl. ¶ 44. Fearing that he would not be permanently placed in Washington, D.C. if he refused, he met her only to find that no work needed to be discussed.

In November 2005, Mr. Materia was eligible for a career ladder promotion. The Agency, however did not promote Mr. Materia despite his superior work performance and achievements during 2004. Moreover, the Agency had repeatedly reassured Mr. Materia that it would promote Mr. Materia to a GS-11. Amended Compl. ¶ 45. Ms. Summers contacted Mr. Materia and informed him that she had been involved with the decision regarding his promotion and would

also be involved with the decision regarding his permanent placement. Amended Compl. ¶ 46, 48.

In December 2005, Ms. Summers continued to harass Mr. Materia by inviting him for an evening at the White House under the pretext of meeting a contact that might be interested in helping a new program that Mr. Materia was managing. Afraid that he would not get the permanent assignment to Washington, D.C., Mr. Materia agreed to attend, although he was not given the option of rejecting her invitation. Not surprisingly, there was no meeting planned and this ruse provided Ms. Summers an opportunity to be alone with Mr. Materia under the guise of a work gathering. Amended Compl. ¶ 50.

After Mr. Materia informed management of the harassment by Ms. Summers, management began to treat him differently. For example, in addition to denying him a career ladder promotion in November 2005, senior management, like Mr. Alvarez, became extremely distant and abrasive. Amended Compl. ¶ 47, 51.

In December 2005, Mr. Gordon Burke, the Director of Operations, offered Mr. Materia the position Transition Assistance Program ("TAP") director. Amended Compl. ¶ 52. Mr. Materia accepted the position, but shortly thereafter, in January 2006, Mr. Burke not only rescinded the offer but recommended that he leave the DOL. Amended Compl. ¶ 53. Mr. Burke also informed Mr. Materia that would not advance in his career at the DOL. Id.

In February 2006, Ms. Summers informed Mr. Materia that she would arrive in Washington, D.C. to spend Valentines' Day with him. After Mr. Materia refused to see her on Valentine's Day in Washington, D.C., she repeatedly called Mr. Materia and sent him a threatening email. Amended Compl. ¶ 55. She informed him that he would regret his actions, he would not be promoted and that he should consider his professional reputation ruined at DOL.

Id.  The harassing e-mails and telephone calls from Ms. Summers to Mr. Materia at his office continued even when she left the Agency.  See EEO Counselor's Summary Report, Informal Complaint of Discrimination, attached hereto as Exhibit 1, p. 4.

In March 2006, Mr. Materia once again met with Mr. McWilliam to discuss his concerns regarding his career and Ms. Summers' never-ending harassment.  Amended Compl. ¶ 56.  Mr. McWilliam admitted that DOL officials believed that he and Ms. Summers were romantically involved, including the Agency Secretary, Mr. Ciccolella, and suggested that he leave DOL.  Id.  Mr. Materia was shocked that the Agency would not address his concerns but would instead call for his resignation.

Certain that he was not going to get any assistance from management or the Agency, Mr. Materia filed a complaint with the EEOC in April 2006 and a formal complaint in June 2006.  Since filing his complaint, however, management has gone out of its way to harass Mr. Materia and retaliate against him.  And, although Ms. Summers supposedly left the Agency, she continued to harass Mr. Materia in Washington, D.C.  For example:

- ➢ In March 2006, after her supposed resignation from the Agency, Ms. Summers sent Mr. Materia an e-mail indicating that she was pregnant by someone else but was still open to meeting him when she returned to D.C.  She also informed Mr. Materia that she and her fiancée were renting an apartment on Capitol Hill and that she had opened a business called Northeast Strategies.  She offered Mr. Materia a position with her new company.  Pl. Ex. 1, pp. 2-3.
- ➢ In May/June 2006, Ms. Summers continued her harassment of Mr. Materia and, among topics, called him to discuss the Yankee/Red Sox baseball game.  Pl. Ex. 1, p. 4.

- In October 2006, Mr. Materia met with his current program manager, Ronald Drach, in Washington, D.C., and confided in him about Ms. Summers' harassment and asked for his assistance. Amended Compl. ¶ 60. Mr. Drach informed Mr. Materia that he was not interested in his concerns about Ms. Summers. Id. Thereafter, Mr. Drach became distant and non-supportive. Id.

- The Agency threatened to end Mr. Materia's temporary duty in Washington, D.C. in December 2006. Amended Compl. ¶ 62.

- The Agency failed to give Mr. Materia his performance evaluation which was due at the beginning of the year.

- The Agency failed to award Mr. Materia a bonus for superior work during 2006 and did not allow him to attend any training. Amended Compl. ¶¶ 69-72.

- The Agency threatened to terminate Mr. Materia for no apparent reason. Amended Compl. ¶ 72.

- On January 8, 2007, Mr. Materia requested that he be considered for a promotion to the GS-12 level as he had become eligible for his career-ladder promotion. Amended Compl. ¶ 61. Mr. Drach, however, ignored his requests.

- In January 2007, Mr. Drach retaliated against Mr. Materia by undermining his authority on a project on which he had become the lead contact person and sent e-mails to Mr. Materia's colleagues instructing them not to take any direction from Mr. Materia. Amended Compl. ¶ 73.

- In February 2007, the Agency informed Mr. Materia that the Veterans Employment Specialist position, for which he had applied and been deemed the best qualified for

   in November 2006, was inexplicably cancelled by the deciding official, Mr. Ciccolella. Amended Compl. ¶ 74.

- On March 15, 2007, Mr. Ciccolella singled Mr. Materia out at a meeting and refused to allow him to participate in a discussion regarding a program Mr. Materia had been managing for over nineteen months. Amended Compl. ¶ 75.

- In April 2007, the Agency suddenly recalled Mr. Materia back to Boston, citing that his duties in his REALifelines position had ended. Amended Compl. ¶ 78. Curiously enough, the work done by Mr. Materia did not end and his job duties and responsibilities were assigned to two other contract employees in the Washington, D.C. area.

### III. ARGUMENT

#### a. Standards of Review

##### 1. Rule 12(b)(1) or 12(b)(6) [1]

In determining whether a motion to dismiss should be granted, the standard is "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Lee v. Wolfson, 265 F. Supp 2d 14, 17 (D.C. Cir. 2003). The court should "assume the truth of the allegations in plaintiff's complaint and liberally construe the possible theories of liability asserted there." Zoelsch v. Arthur Andersen & Co.,

---

[1] In its Motion, Defendant also seeks to dismiss the retaliation claims Plaintiff added to his amended complaint on the theory that the claims fail to state a claim pursuant to Rule 12(b)(6) because these claims have not yet been administratively exhausted. Plaintiff has, in fact, filed an EEO complaint for his retaliation claims and within the next six months, or less, these claims will be ripe for adjudication.
  Accordingly, Plaintiff respectfully requests that the Court dismiss the amended claims without prejudice and allow Plaintiff to reinstate these claims at the conclusion of the Agency's administrative processing of the allegations.

824 F.2d 27, 33 (D.C. Cir. 1987); See also, Shear v. National Rifle Ass'n, 606 F.2d 1251, 1253 (D.C. Cir. 1979). The allegations in the complaint should be construed in a light that is most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### 2. Rule 12(b)(3) [2]

Title VII's venue provision makes venue proper in any one of three different circumstances. See 42 U.S.C. § 2000e-5(f)(3). Specifically, Title VII provides that discrimination claims arising under the statute may be brought in the judicial districts where: (1) the unlawful employment practice is alleged to have been committed; (2) the employment records relevant to such practice are maintained and administered; or (3) where plaintiff would have worked, but for the alleged unlawful employment practice.

In order to prevail, and have this case transferred to the District of Massachusetts, it is Defendant's burden to prove that venue does not lie under any of the three circumstances set forth in the statute. "If the plaintiff brings suit in a jurisdiction that does not satisfy one of the venue requirements listed in 42 U.S.C. § 2000e-5(f)(3), venue is improper." Darby v. U.S. Dep't of Army, 231 F.Supp.2d 274, 276-77 (D.D.C. 2002). In other words, the Defendant must establish that the Agency's unlawful employment practice only took place in Boston, Massachusetts. See 42 U.S.C. § 2000e-5(f)(3).

Because this is a Rule 12(b)(3) motion, Defendant has the burden to establish that venue is improper. Darby at 277. This Court must accept the plaintiff's well-pled factual allegations in the Complaint regarding venue as true, must draw all reasonable inferences from those allegations in the plaintiff's favor, and must resolve any factual conflicts in the plaintiff's favor.

---

[2] Alternatively, should it be determined that this Court lacks venue over Plaintiff's claims, Plaintiff requests that this action be transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1406(a).

Id. Absent an evidentiary hearing, Mr. Materia need only make a *prima facie* showing of proper venue to avoid transfer. Cutco Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986).

### b. Most of the Agency's Unlawful Employment Practices Occurred in Washington, D.C., not in Boston, as the Defendant Avers.

The first venue option under Title VII is "any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e5(f)(3). Title VII venue determinations are based on a "commonsense appraisal" of events having operative significance. Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978); Donnell v. Nat'l Guard Bureau, 568 F. Supp. 93, 94 (D.D.C. 1983).

Defendant's assertion that the majority of the unlawful employment practices occurred in Boston, Massachusetts is simply false. Although it is true that Ms. Summers began her incessant harassment of Mr. Materia in Boston in January 2005, her harassment continued after Mr. Materia transferred to Washington, D.C. and even continued after she supposedly resigned from the Agency in March 2006. See Pl. Ex. 1. Ms. Summers' harassment was incessant from its inception and did not let-up when Mr. Materia relocated to the District of Columbia. In fact, it was clear that she took great pleasure in tormenting Mr. Materia with the idea that she had control over his future in Washington, D.C. and with the DOL. See Amended Compl. ¶ 42-43. The evidence is clear that Ms. Summers' harassment of Mr. Materia in Washington, D.C. spanned from approximately August 2005 until at least May 2006, a ten (10) month period. See Amended Compl. ¶¶ 42-48, 50, 55 and Pl. Ex. 1. Allowing this case to proceed to discovery will allow Mr. Materia to produce evidence showing that Ms. Summers constantly harassed him, either in person, by phone or by e-mail, after he fled Boston to escape her unwelcome sexual advances and the detrimental impact she had on his career.

Furthermore, as the facts indicate, other managers also began to harass Mr. Materia and he quickly saw that his fate was sealed within the DOL. In particular, Mr. Materia's supervisors and other high ranking officials in the Agency, such as Ms. Thompson, Mr. Drach, Mr. Ciccolella, Mr. Burke, Mr. Alverez and Mr. McWilliam, picked up the mantle from where Ms. Summers left-off and professionally isolated Mr. Materia during his employment in Washington, D.C. See Amended Compl. ¶¶ 39-41, 45, 47, 51-54, 56. And despite his repeated entreaties to management, Mr. Materia was not spared any harassment by Ms. Summers. In fact, management resented the fact that Mr. Materia had made a complaint about the harassment and subsequently retaliated against him. See Amended Compl. ¶¶ 59-78. By denying him promotions, bonuses, and permanent placement in the District of Columbia, when the Agency rescinded the vacancy announcement for his position, management hoped Mr. Materia would resign. When that didn't work, management took to ostracizing him and blatantly telling him to look elsewhere for a position. All of these actions occurred, of course, after his relocation to the District of Columbia.

While Defendant's Motion neatly outlines the Agency's unlawful employment practices against Mr. Materia in Boston, it fails to acknowledge that the Agency has subjected Mr. Materia to harassment since he began working in Washington, D.C. in August 2005 and continues to the present day, a time period just shy of two (2) years. Indeed, the Defendant asserts that "The only allegations in Plaintiff's Complaint concerning the District of Columbia allegedly occurred in the latter part of 2005, and they were minimal." Defendant's Mem. at p. 8. This is not only misleading, but categorically untrue. While the Plaintiff does not disagree that the Agency subjected him to harassment in Boston for an eight (8) month period between January 2005 and August 2005, the Plaintiff is equally as adamant that the Agency subjected him to harassment in

the District of Columbia far longer than it did in Massachusetts. Indeed, the harassment, and later retaliation, all of which occurred in the District of Columbia, far exceeds the 8 month period of harassment in Massachusetts and, starting in August 2005 and continuing to the present, the events which have occurred in this district span a 22 month period.

Lastly, judicial economy and the interests of justice would not be served should this case be transferred to Massachusetts. Since Mr. Materia filed his EEO complaint in April/June 2006, he has been subject to retaliation. See Plaintiff's Amended Complaint. All of these retaliatory actions occurred solely in Washington, D.C. Indeed, if Defendant is allowed to prevail, Mr. Materia would have no choice but to litigate the allegations of harassment in Boston, when the majority of the events occurred here, while simultaneously litigating the retaliation claims in this Court. Clearly, forcing separation of Mr. Materia's claims in this manner would be nonsensical. Simply put, it would be a colossal waste of judicial resources to litigate in two different forums and this Court should have venue over all of Mr. Materia's claims.

In sum, Defendant's contention that the majority of unlawful employment practices occurred in Massachusetts and not in the District of Columbia must be rejected. As clearly set forth in the Amended Complaint, both the harassment and retaliation occurred in the District of Columbia, and transfer to any other venue should be rejected. Additionally, the interests of justice, judicial economy and the convenience of the parties and witnesses also dictate that, given the significant contact the underlying locus of events has to this district, and the fact that Mr. Materia's retaliation claims arise only in D.C., it is plain that this Court should exercise jurisdiction.[3]

---

[3] Although not argued at length herein, Plaintiff also meets the second and third prong of 42 U.S.C. § 2000e-5(f)(3). Specifically, with respect to the second prong, although Defendant contends that the Plaintiff's employment records and official personnel file are located in Massachusetts at the regional office of the Office of the Assistant Secretary for Administration and Management, Defendant's assertion is not completely true. As a point of fact, Mr.

## IV.  CONCLUSION

Therefore, for all the foregoing reasons, the Court must deny the Defendant's Motion to Transfer.

Dated: June 11, 2007                              Respectfully submitted,

                                                        _____/s/_____
                                                        Camilla C. McKinney, Esq.
                                                        McKinney & Associates, PLLC
                                                        1100 Fifteenth Street, N.W., Suite 300
                                                        Washington, D.C. 20005
                                                        (202) 861-2934/(202) 517-9111 (fax)
                                                        Attorneys for Plaintiff Joseph Materia

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2007, I caused a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint or Certain Claims, or in the Alternative, to Transfer for Improper Venue be served electronically, via the CM-ECF system, to:

JUDITH A. KIDWELL
Assistant United States Attorney
555 4th Street, N.W., Room E4905
Washington, D.C. 20530

                                                        _____/s/_____
                                                        Camilla C. McKinney

---

Materia's official personnel file is available for review online and is globally accessible.  As such, Mr. Materia can simply assess his entire file via the Internet.  Thus, the more relevant question is where Defendant electronically maintains the personnel records of its employees, an issue that cannot be resolved without discovery.
    With respect to the third prong, it is disingenuous for Defendant to use this prong under 42 U.S.C. § 2000 (e)-5)f)(3) as a way to manipulate venue.  The third prong was presumably developed to protect Plaintiffs from having to litigate in a forum that they would not be in but for the Defendant's unlawful actions.  And, while it is true that Mr. Materia relocated to Washington, D.C., he only did so because of the unlawful employment practices and Ms. Summer's constant sexual harassment.  Mr. Materia left Boston specifically to start a clean slate, free from the harassment and to put his career back on track from the damage caused by Ms. Summer.  Instead, Ms. Summer followed Mr. Materia to Washington, D.C. and destroyed his professional reputation and career with his managers in this jurisdiction as well.  For these reasons, Defendant should not turn this prong on its head.  But for the harassment, Mr. Materia would have likely stayed in Boston and the fact that he sought to escape a hostile work environment by transferring to D.C. should not be a convenient excuse by Defendant to deny venue in this jurisdiction.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JOSEPH MATERIA** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-2251(RWR) |
| **ELAINE L. CHAO, SECRETARY UNITED STATES DEPARTMENT OF LABOR** | ) |
| Defendant. | ) |

### ORDER

Upon consideration of Defendant's Motion to Dismiss Amended Complaint or Certain Claims, or in the Alternative, to Transfer for Improper Venue; Plaintiff's Opposition thereto; and the entire record herein, it is hereby ORDERED that the Defendant's Motion is hereby DENIED.

It is so ORDERED this _____ day of _____, 2007.

_____
U.S. District Court Judge

# PLAINTIFF'S EXHIBIT 1

# EEO COUNSELOR'S SUMMARY REPORT

| | |
|---|---|
| **Name of complainant:** | Joseph Materia |
| **Home Address** | 2201 Wilson Boulevard |
| | Arlington, VA 22201 |
| | (339) 237-1285 |
| | |
| **Office Address** | 2107 Wilson Boulevard |
| | Arlington, Virginia 22201 |
| **Date of complaint:** | May 9, 2006 (Received in OCR) |
| **Basis for complaint:** | Sex - Sexual Harassment |

**Background:** Joseph Materia is a Veterans Program Specialist – GS-11 assigned to the Military Severely Injured Center in Arlington, Virginia. Mr. Materia contacted the U.S. Department of Labor's Civil Rights Center on May 1, 2006. His complaint alleged that Kathleen Summers, Secretary's Representative to the Boston Office of Congressional and Intergovernmental Affairs sexually harassed him during his employment at that location and that the harassment continued when he transferred to the Washington Metropolitan Area. Mr. Materia said that he left the Boston Area because of Ms. Summer's harassment.

Mr. Materia, a graduate of West Point Military Academy, is a retired Colonel and has served time in combat. Mr. Materia said he was introduced to Ms. Summers early in his career at DOL by his immediate supervisor in Boston. According to Mr. Materia, Ms. Summers said she had a lot of "pull" with the Undersecretary and that she should affect him getting promotions. Within two weeks of meeting Ms. Summers, he was asked to go to New Hampshire. Ms. Summers traveled with him. At that time, she indicated that she just wanted to be his friend.

R- 7/5/06

Mr. Materia said when he met Ms. Summers, he was going through a tough time. He was in the process of getting a divorce from his wife of 20+ years and was not interested in entering a relationship with anyone. He said they went out to dinner a couple of times but that he made it clear to her that he was not interested in having a relationship with anyone and that he was also not interested in dating anyone.

But according to Materia she was insistent in having a relationship with him. Materia said he was sent to Vermont to cover an event and that Ms. Summers showed up. Materia said that Ms. Summers insisted that she could help him in his career but whenever he was not amenable to her advances, she would imply that she could hurt his career. Mr. Materia said that some of the advances Ms. Summers made toward him included:

- Ms. Summers would call him into her office and try to kiss him;
- Ms. Summers lured him to a hotel room in downtown Boston on the pretext of introducing him to someone who could further his career. Mr. Materia agreed to meet this person and when he got to the hotel, Ms. Summers had rented the hotel room complete with flowers and wine and admitted that she was the **friend**. Mr. Materia said he turned and walked out. The next day she came into his office that he shared with another person and sat the same flowers on his desk and said "Thanks for last night".

Mr. Materia transferred to the Washington area in August 2005. He said she continually sent him e-mails, gifts (which he donated to charity) and called him regularly. Mr. Materia said that he spoke with someone in his office about the harassment and that the person suggested that he go see Gordon Burke, Director of Policy for the Veterans Bureau.

Ms. Summers asserts that she was the injured party and that Mr. Materia led her on to further his career. However the attached e-mails (that Ms. Summers sent to Mr. Materia), does not reflect that Mr. Materia and Ms. Summers had any real relationship.

The last e-mail Mr. Materia got from Ms. Summers said she was pregnant by Someone else but was still open to meeting him when she returned to DC.

She told him she was renting an apartment on Capital Hill with her fiancée. According to Ms. Summers, she had resigned from her job at the Labor Department and had opened a business called Northeast Strategies. She again, offered Mr. Materia a position at her new company.

*Florine A. Byrd*
*EEO Counselor*
*(202) 693-9565*

June 16, 2006 – The assigned EEO Counselor, Ms. Florine Byrd, was departing on official travel, so I issued Joseph Materia, in person, his Notice of Right to File a Discrimination Complaint form and a formal complaint form. To finalize this case, I interviewed the other party involved, Ms. Kathleen Summers. The following is a summary of said interview.

June 16, 2006 – Interview with Kathleen Summers (cell phone) (857-205-6632).

After identifying myself and the purpose of my telephone call, Ms. Summers said "this must be a joke." I assured her that this was not a joke. She then stated that she and Mr. Materia had dated – attended sports events together; had been to dinner; and they recently attended the White House Christmas party. She stated that Mr. Materia had expected her to get him a promotion. She said they had broken up in February 2006, and she resigned from the Department of Labor in March 2006 to start her own business. Ms. Summers said she had planned to celebrate Valentine's Day, 2006 with Mr. Materia but prior thereto, she received an e-mail from him in which he informed her that he was dating someone else. This, she said, upset her very much since she thought they were very good friends – and she added, "I loved Joe." She said she had called him about two weeks ago to discuss the Yankee/Red Sox baseball game. Ms. Summers also stated that she had helped Mr. Materia get a transfer to Washington, D. C.

A resolution of this case was not achieved during the informal stage.

Lillian Winstead
EEO Counselor
OASAM – National Office
(202)693-6548
July 5, 2006